UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHNLANDER JACKSON-FORBES,**

    **Plaintiff,**

  v.

**STATE OF OHIO INDUSTRIAL COMMISSION,**

    **Defendant.**

Case No. 2:18-cv-1544
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

The matter before the Court is Defendant State of Ohio Industrial Commission's ("Ohio Industrial Commission" or "Defendant") motion for summary judgment. (ECF No. 50). Plaintiff Johnlander Jackson-Forbes ("Plaintiff" or "Jackson-Forbes") responded, (ECF No. 55), to which Defendant replied (ECF No. 56). For the reasons that follow, the Court **GRANTS** Defendant's motion.

**I.**

Up until the events giving rise to this lawsuit, Plaintiff had a successful career with the Ohio Industrial Commission as an attorney. (Jackson-Forbes Dep. at 14, ECF No. 44, PageID 154). She began as the Southwest Regional Manager, and then became the Manager of Legal Services. (*Id.* at 14,17, PageID 154, 157).

As the Manager of Legal Services, Plaintiff oversaw Rachel Black. (*See* McLendon Dep. at 11, ECF No. 54). The two had "problems" with each other. (*Id.* at 12). In October 2013, Black became the Chief Legal Counsel of the Ohio Industrial Commission. (Compl. at ¶ 34, ECF No. 1; *admitted in* Answer at ¶ 34, ECF No. 8). As Chief Legal Counsel, Black was Plaintiff's boss, which caused the issues and problems between them to snowball. (McLendon Dep. at 12). In

August 2014, Plaintiff filed a race-based discrimination complaint with the Ohio Department of Administrative Services, and a charge with the Ohio Civil Rights Commission. No probable cause was found. (Compl. at ¶ 56; *admitted in relevant part in* Answer at ¶ 56).

Around May 2015, the Chief of the Employment Law Section of the Ohio Attorney General's Office ("Chief") emailed Black and the Ohio Industrial Commission's Executive Director, Tim Adams. (Black Dep. at 23, ECF No. 45; May Email, ECF No. 45-1, PageID 514). The email expressed the Chief's concern that Plaintiff had improperly appeared and represented her husband before the State Personnel Board of Review, and that she may have misused state time and equipment. (May Email at PageID 514).

An investigation followed, it revealed that Plaintiff had committed ethical violations. (Def. Ex. V, ECF No. 50-3, PageID 694–95). On September 3, 2015, Defendant provided Plaintiff with notice that a pre-disciplinary hearing would be held in the coming days to determine the discipline for Plaintiff's alleged (1) violation of Ohio Administrative Code 4121-15 or Ohio Revised Code 102 Code of Ethics, (2) interference with, failure to cooperate with, or provision of false information in conjunction with an official investigation, and (3) unauthorized/personal use of state equipment and resources. (Def. Ex. E, ECF No. 44-1, PageID 338).

Shortly before the hearing, Plaintiff reached out to the Ohio Civil Rights Commission. (Email, ECF No. 55-5; *see also* Jackson-Forbes Dep. at 65). The Ohio Civil Rights Commission followed up with an email to Plaintiff's work address, recapping the conversation. (Email, ECF No. 55-5). Defendant learned about this email at some point, as Defendant turned over the email during discovery. (*See id.*).

The hearing occurred, and the meeting officer found Plaintiff to have committed the alleged violations, recommending discipline. (Def. Ex. I, ECF No. 50-1, PageID 581–82). Thomas

Bainbridge, Chairperson for Defendant, was in charge of Plaintiff's discipline and decided to terminate Plaintiff's employment. (Bainbridge Dec. at ¶¶ 2, 5, ECF No. 50-1, PageID 569–70). But, in leu of termination, he decided to offer Plaintiff a Last Chance Agreement. (*Id.* at ¶ 6). The Last Chance Agreement contained, among other things, an agreement not to file charges with the Equal Employment Opportunity Commission. (Pl. Ex. 4, ECF No. 55-4, PageID 879).

On October 2, 2015, Defendant presented Plaintiff with the Last Chance Agreement; Plaintiff objected to the EEOC waiver and did not sign. (Jackson-Forbes Dep. at 69, ECF No. 44, PageID 209). Plaintiff then spoke with Defendant's EEO Director, who provided Defendant's HR Director with case-law on the invalidity of such a waiver. (McLendon Dep. at 25, ECF No. 54, PageID 839), The language of the Last Chance Agreement did not change, Plaintiff refused to sign, and Plaintiff was terminated. (*See* Last Chance Agreement, ECF No. 55-4); Bainbridge Dec. at ¶ 6, ECF No. 50-1, PageID 570; Def. Ex. D, ECF No. 50-1, PageID 572–73).

Plaintiff pursued a charge with the EEOC; the EEOC closed its investigation on November 16, 2018 and issued Plaintiff a right to sue letter. (Def. Ex. T, ECF No. 44-1, PageID 446). On November 29, 2018, Plaintiff filed suit against Defendant in this Court. (ECF No. 1). Plaintiff claims Defendant discriminated against her because of race and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 as well as parallel Ohio law. (*Id.* at 11–12). Defendant now moves for summary judgment, and Defendant's motion is ripe for review.

3

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

4

## III.[1]

### A. Discrimination

As an initial matter, Defendant moves for summary judgment on Plaintiff's race-based discrimination claim. (Mot. at 11–17, ECF No. 50). Plaintiff does not respond with any evidence to support that claim, nor does Plaintiff make an argument. Accordingly, Defendant is entitled to summary judgment on Defendant's race-based discrimination claim. With that, the Court turns to Plaintiff's retaliation claim.

### B. Retaliation

#### 1. Direct Evidence

A plaintiff can establish a claim of retaliation using either direct or indirect evidence. *See Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004). "Direct evidence is evidence that proves the existence of a fact without requiring any inference." *Id.* at 548.

Plaintiff argues that the Last Chance Agreement is direct evidence of retaliation. (Pl. Resp. at 7, ECF No. 55). In support, Plaintiff cites to Seventh Circuit precedent, *EEOC v. Board of Governors of State Colleges & Universities*, 957 F.2d 424 (7th Cir. 1992). In *Board of Governors*, the Seventh Circuit found that a collective bargaining agreement violated the ADEA as retaliatory, where it allowed for adverse employment action based on participation in a protected activity, and where such actions took place. *See id.* at 425–26, 431. Plaintiff submits that the Last Chance Agreement that Defendant offered to her is retaliatory because it targets her right to engage in a

---

[1] The same analysis generally applies to Plaintiff's claims under Title VII and Ohio law. *Staunch v. Cont'l Airlines*, Inc., 511 F.3d 625, 631 (6th Cir. 2008); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981). Accordingly, the analysis herein applies the same to Plaintiff's claims under Ohio law.

protected activity, and because she would be terminated if she (1) did not sign the agreement, or (2) signed the agreement then pursued an EEOC charge. (Pl. Resp. at 9, ECF No. 55).

The Sixth Circuit considered the precedential value of *Board of Governors* and found it uncompelling. *EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490, 498 (6th Cir. 2006). In *SunDance*, a corporation's separation agreement conditioned severance pay on the promise to not file charges with the EEOC, but there were no allegations of enforcement. *See id.* at 597–98. The *SunDance* court found that the separation agreement did not amount to facial retaliation. *Id.* In so finding, the court reasoned that *Board of Governors* was unpersuasive as there the defendant took an adverse employment action against an employee who actually pursued a charge with the EEOC. *Id.* at 498.

Neither *SunDance* nor *Board of Governors* is directly on point. *Board of Governors* would be on point if Plaintiff had signed the Last Chance Agreement, then pursued a charge with the EEOC, and been terminated as a result. *See Board of Governors*, 957 F.2d at 425–26. *SunDance* would be on point if Plaintiff signed the agreement and nothing else happened. *See SunDance*, 466 F.3d at 497–98. Neither of those scenarios has occurred in this case. Here, there is a plaintiff who allegedly violated several of her employer's policies, an unsigned Last Chance Agreement that disclaims bringing EEOC charges, and a defendant who terminated Plaintiff for violating these policies after Plaintiff declined to sign the Last Chance Agreement.

While a juror could view this as evidence of retaliation, it is not direct evidence of retaliation. It is instead, circumstantial. As such, while relevant to the inquiry under *McDonnell Douglas*, it is not sufficient for Plaintiff to establish her case on its own, without application of the *McDonnell Douglas* test.

**2. Indirect Evidence**

Absent direct evidence, the common course for proving retaliation is to use indirect evidence and apply the *McDonnell Douglas* test. *E.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). First, Plaintiff must make a prima facie case by showing that (1) Plaintiff engaged in a protected activity, (2) Defendant knew of Plaintiff's engagement in the protected activity, (3) Defendant took an adverse employment action against Plaintiff, and (4) there is a causal connection between Plaintiff's engagement in the protected activity and Defendant's adverse action. *Id*. Second, if Plaintiff has established a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id*. Third, if Defendant proffers such a reason, the burden shifts back to Plaintiff to show that Defendant's proffered reason is pretext for discrimination. *Id*.

Plaintiff submits that she engaged in three protected activities: (1) her 2014 charge with the Ohio Civil Rights Commission, (2) her 2015 inquiry with the Ohio Civil Rights Commission, and (3) her opposition to the language of the Last Chance Agreement. (Pl. Mot. at 10–11, ECF No. 55). Plaintiff submits that Defendant knew of these activities, and that it terminated her employment because of them. (*Id.* at 11–17).

The Court will assume arguendo that Plaintiff has established a prima facie case, because Defendant has proffered a legitimate nondiscriminatory reason for its actions and Plaintiff has not argued pretext. Defendant proffers that it terminated Plaintiff for violating three policies. Namely, Plaintiff allegedly (1) violated Ohio Administrative Code 4121-15 or Ohio Revised Code 102 Code of Ethics, (2) interfered with, failed to cooperate with, or provided false information in conjunction with an official investigation, and (3) used state equipment and resources without authorization for personal use. (Def. Ex. E, ECF No. 44-1, PageID 338). Plaintiff responds as follows:

"[Defendant's] articulated non-retaliatory reason is that Plaintiff was terminated because of her refusal to sign the [Last Chance Agreement]. Because the [Last Chance Agreement] is unlawful, it may not constitute a legitimate, non-retaliatory reason for [Defendant's] actions." (Pl. Resp. at 17, ECF No. 55). The trouble with Plaintiff's response is two-fold. First, that was not Defendant's proffered reason. (*See* Pl. Mot. at 13–15, 18, ECF No. 50). Second, the violation of the three policies, which is Defendant's proffered reason, can be a legitimate, nondiscriminatory ground for termination. Plaintiff has not argued that the violation of those policies cannot be a legitimate, nondiscriminatory reason to terminate employment, and Defendant has carried its burden in this regard.

The burden thus shifts back to Plaintiff to present some evidence that Defendant's proffered reason was pretextual. However, Plaintiff presents no such evidence. Indeed, Plaintiff expressly declined to argue pretext. (Pl. Resp. at 17, ECF No. 55) ("Because [Defendant] has failed to meet its burden of articulating a legitimate, non-retaliatory reason for the adverse employment action, the pretext inquiry is inapplicable.").

Accordingly, Plaintiff has not presented an argument or evidence of pretext, which is necessary to establish a claim of retaliation under the *McDonnell Douglas* test. Thus, Plaintiff cannot satisfy the *McDonnell Douglas* test. And, as this Court has already concluded that Plaintiff's retaliation claim is not supported by direct evidence, Plaintiff has no remaining routes to establish her claim. Defendant is entitled to summary judgment.

## V.

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment. (ECF No. 50). The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**9/21/2021**　　　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATED**　　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

9